1 | John L. Smaha, Esq., Bar No. 95855
Gustavo E. Bravo, Esq. Bar No. 218752
2 | **SMAHA LAW GROUP**
2398 San Diego Avenue
3 | San Diego, CA. 92110
Telephone:   (619) 688-1557
4 | Facsimile:   (619) 688-1558

5 | Attorneys for Debtor/Appellant YBA NINETEEN, LLC

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | In re                                          Case No.   13-cv-02426-DMS-WMC

12 | YBA NINETEEN, LLC                    BK Appeal No. 3

13 |                        Debtor/Appellant    ***EX PARTE* MOTION FOR STAY
PENDING APPEAL**

14 | v.

15 | INDYMAC VENTURE, LLC

16 |                        Appellee.

17

18

19

20

21

22

23

24

25

26

27

28

---

EX PARTE MOTION FOR STAY PENDING APPEAL

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Summary of Procedural Nature of Case . . . . . . . . . . . . . . . . . . . . 1
    B.   Bankruptcy Procedure Leading Up To The
        October 3, 2013 Status Conference . . . . . . . . . . . . . . . . . . . . . 3

II.   LEGAL BASIS FOR STAY PENDING APPEAL . . . . . . . . . . . . . . . . . . 12

    A.   The Bankruptcy Court's Ruling is a "Final Order" and
        is Therefore Immediately Appealable . . . . . . . . . . . . . . . . . . . . 12
    B.   Motion For Stay Pending Appeal . . . . . . . . . . . . . . . . . . . . . . . . 13
    C.   Legal Standard for Issuing a Stay Under Federal Rule of
        Bankruptcy Procedure § 8005 . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.   THE FACTS OF THIS CASE SUPPORT THE IMPOSITION
     OF THE STAY PENDING APPEAL . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.   Debtor's Likelihood of Success . . . . . . . . . . . . . . . . . . . . . . . 15

        1.   The Bankruptcy Court Denied the Debtor Due Process
            On the Conversion Order . . . . . . . . . . . . . . . . . . . . . . . 15
        2.   The Bankruptcy Court Abused Its Discretion By
            Entering The Conversion Order . . . . . . . . . . . . . . . . . . . 19

    B.   Significant and Irreparable Harm Will Come to Debtor
        Absent A Stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    C.   Harm To The Adverse Party If A Stay Is Granted . . . . . . . . . . . . . 25
    D.   Where The Public Interest Lies . . . . . . . . . . . . . . . . . . . . . . . 26

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

*Ellsworth v. Lifescape Med. Assoc's., P.C. (In re Ellsworth)*
(9th Cir. 2011) 455 B.R. 904, 914 . . . . . . . . . . . . . . . . . . . . . . . . 15

*GMAC Mortg. Corp. v. Salisbury (In re Loloee)*
(9th Cir. BAP 1999) 241 B.R. 655, 661 . . . . . . . . . . . . . . . . . . . . . 15

*In re Bijelonic*
(C.D. Cal 2012) 2012 WL 2263259, *5 . . . . . . . . . . . . . . . . . . . . . . 16

*In re Can Alta Properties, Ltd.*
(1988 9th Cir. BAP 87 BR 89) . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Jackson*
(9th. Cir. BAP 2012) 2012 WL 5416529, *5 . . . . . . . . . . . . . . . . . . 16

*In re Johnston*
2007 WL 2684736 [Bankr.E.D.Wash. 2007] . . . . . . . . . . . . . . . . . . . . . . . 14

*In re North Plaza, LLC*
395 B.R. at 119-120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 26

*In re Pon*
1994 U.S. Dist. LEXIS 2559 at *6 [N.D.Cal. 1994] . . . . . . . . . . . . . . . . . . 14

*In re Rosson*
(9th Cir. 2008) 545 F.3d 764, 769 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In re State Street Associates, L.P.*
(Bankr.N.D.N.Y. 2006) 348 B.R. 627) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Johnston v. JEM Dev. Co. (In re Johnston)*
(9th Cir. BAP 1992) 149 B.R. 158, 160) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lynch v. Ca. Pub. Util. Comm'n*
2004 WL 793530, *2, 2004 U.S. Dist. LEXIS 6022 at *6 (N.D. Cal. 2004) . . . . 14

*Mason v. Young (In re Young)*
(10th Cir. 2001) 237 F.3d 1168, 1173) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mullane v. Cent. Hanover Bank & Trust, Co*
(1950) 339 U.S. 306, 314) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Owens-Corning Fiberglass Corp. v. Ctr. Wholesale, Inc.,*
*(In re Ctr. Wholesale, Inc.,* (9th Cir. 1985) 759 F.2d 1440, 1448 . . . . . . . . . . . 15

*Pioneer Liquidating Corp. v. U.S. Trustee*
*( In re Consol. Pioneer Mortg. Entities),*
(9th Cir. 2001) 264 F.3d 803, 806 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*U.S. v. Hinkson*
(9th Cir. 2009) 585 F.3d 1247, 1262 . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wrobel v. S.L. Pope & Assocs.*
2007 WL 2345036, *1 (S.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Bankruptcy Codes**

**11 U.S.C. Section**

Section 105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Section 345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Section 362(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3
Section 1112(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Section 1112(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
Section 1112(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20
Section 1112(b)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**28 U.S.C. Section**

Section 158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

<u>**California Codes**</u>

Cal.Civ.Code § 3387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

<u>**Federal Rule of Bankruptcy Procedure**</u>

Rule 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Rule 8005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 13

W:\YBA Nineteen, LLC\Appeal.Conversion\TOC-TOA 10-15-13.wpd

Debtor and Appellant YBA Nineteen, LLC ("Debtor"), hereby moves this Court for an order staying the Bankruptcy Court's Order Converting Case To One Under Chapter 7 of October 4, 2013, as the Bankruptcy Court failed to follow the Bankruptcy Code, specifically 11 U.S.C. Section 1112(b) requiring a noticed motion and an opportunity to be heard on a motion to convert and abused its discretion in converting the Debtor's case under the Scheduling Order and 11 U.S.C. Section 105(a). Debtor requested a stay pending appeal at the hearing of this matter and the Bankruptcy Court refused to stay the effect of the order in any way (Federal Rule of Bankruptcy Procedure 8005.)

# I.

# **STATEMENT OF CASE**

*A.     Summary of Procedural Nature of Case.*

As the District Court is aware, this is the third appeal of a decision by the Bankruptcy Court in this matter.  In this instance, the Debtor is appealing the Bankruptcy Court's order converting the Debtor's case from chapter 11 to chapter 7 under the Bankruptcy Court's own motion on a sua sponte basis.   The Debtor has listed Indymac Venture, LLC as the appellee as Indymac Venture, LLC was present at the hearing on the status conference.  Indymac Venture, LLC made the original suggestion for conversion and has requested notice in the pending appeal.

The first appeal, *YBA Nineteen v. Indymac Venture, LLC*, Case Number 13-cv-01326-WQH-RBB (the "First Appeal") (See Notice of Lodgment ("NOL") Exhibit A, a true and correct copy of the docket for the First Appeal) dealt with the Bankruptcy Court's decision to grant relief from stay under 11 U.S.C. Section 362(d)(1) for cause as against the Debtor's real property located at 5955 La Jolla Corona Drive, La Jolla, California 92037 (the "Subject Property"), including a ruling that the matter had been filed in bad faith, and under (d)(2) for a lack of equity as the Debtor had initially provided a qualified value of just $1,500,000, whereas the secured claim of Indymac Venture, LLC ("Indymac") was approximately $3,900,000.

1    The bad faith finding was made based on legal and factual arguments that were first
2    raised by Indymac in its reply brief and on the Court's discussion of various factors,
3    including the lack of equity in the real property. Debtor was not allowed to respond
4    to the allegations of bad faith in any way. The (d)(2) relief was based solely on the
5    lack of equity. The Bankruptcy Court found that a lack of equity existed despite the
6    fact that the Debtor had provided significant evidence that the real property was likely
7    worth anywhere between $5,800,000 and $8,000,000 when the real property was
8    ready for sale.  The Debtor filed a motion for reconsideration based on newly
9    discovered evidence in the form of a $5,100,000 valuation that provided an "as is"
10   value for the real property.  The Bankruptcy Court refused to consider this new
11   evidence and upheld the relief from stay order.  (See NOL, Exhibit A, First Appeal
12   Docket No. 5, the Bankruptcy Appellant's Brief).

13          The District Court reversed the Bankruptcy Court on appeal, citing *In re Can*
14   *Alta Properties, Ltd.* (1988 9th Cir. BAP 87 BR 89), which determined that if a debtor
15   was not formed on the eve of bankruptcy, had relief from stay granted less than six
16   months after its petition and had significant equity in the real property, that relief
17   from stay for a bad faith filing was not appropriate. The District Court remanded the
18   matter to the Bankruptcy Court to determine if the $5,100,000 value could be credited
19   and for the Bankruptcy Court to re-evaluate its granting of relief from stay based on
20   the existence of equity in accordance with *Can Alta*. (See NOL, Exhibit A, First
21   Appeal Docket No. 15, the District Court's Order).

22          On remand, the Bankruptcy Court held three days of evidentiary hearings
23   limited solely to determining the value of the Subject Property. Despite Debtor's
24   efforts to, for the first time, provide evidence that would rebut the issue of bad faith
25   raised by Indymac in its original reply brief, the Bankruptcy Court refused to allow
26   any such testimony, indicating that the District Court had remanded the matter only
27   to consider the value of the Subject Property.  In direct contradiction of the District
28   Court's remand order and the Bankruptcy Court's admission that the remand was

1  limited to the determination of the Subject Property, the Bankruptcy Court eventually
2  went on to determine that equity was not a determining factor in granting relief from
3  stay for bad faith under 362(d)(1), ignoring the law of the case established by the
4  District Court.  After not allowing the Debtor to present evidence of good faith, the
5  Bankruptcy went through the trouble of finding new evidence of bad faith by its own
6  research and finding case law that the Bankruptcy Court found more persuasive than
7  the case law established by the District Court.  Based on these new determinations,
8  the Bankruptcy Court once again granted relief from stay on September 18, 2013 for
9  bad faith filing.  Apparently hoping to prevent the Debtor from having a new appeal
10  heard prior to Indymac's immediately scheduled foreclosure, the Bankruptcy Court
11  allowed Indymac to lodge an order without providing the required seven (7) day
12  notice period under the local rules and provided the Debtor with only a twenty-four
13  hour window to obtain a stay pending appeal from the District Court.  The order
14  granting relief from stay for a second time was entered the order the same day.  The
15  Debtor filed its second appeal with the District Court the same day, *YBA Nineteen,*
16  *LLC v. Indymac Venture, LLC*, Case Number 13-cv-02239-WQH-RBB (the "Second
17  Appeal") (See NOL Exhibit B, a true and correct copy of the docket for the Second
18  Appeal).  The Debtor filed an ex parte application for stay of the foreclosure pending
19  appeal on September 19, 2013 (See NOL Exhibit B, Docket No. 3).   The District
20  Court granted stay pending appeal and scheduled a hearing for the appeal on October
21  17, 2013 (See NOL Exhibit B, Docket No. 6).
22  *B.*     *Bankruptcy Procedure Leading Up To The October 3, 2013 Status Conference.*
23         The Debtor filed for bankruptcy protection on January 31, 2013.  On March 6,
24  2013, the Bankruptcy Court issued its standard Order Re: Chapter 11 Petition 1)
25  Setting Status Conference; 2) Setting Compliance Deadlines; 3) Setting Disclosure
26  Statement and Plan Filing Deadlines, and 4) Setting Sanctions, If Appropriate,
27  Including Dismissal, Conversion or Appointment of a Chapter 11 Trustee or
28  Examiner Because of NonCompliance With Above-Reference (sic) Requirements"

1  (the "Scheduling Order") (See NOL, Exhibit C, the Scheduling Order).   The

2  Scheduling Order set a status conference on April 11, 2013 at 2:30 p.m.

3     The Scheduling Order provides "prior to the above-referenced status

4  conference, the Debtor shall have complied with all applicable ORR, federal and local

5  bankruptcy rules governing Chapter 11 cases, including, but not limited to:

6    a. Closure of pre-petition bank accounts and proof of opening new
       debtor-in-possession bank accounts [11 U.S.C. Section 345; ORR B.2]
7      and inclusion of U.S. Trustee as a party  entitled to notice on all
       insurance policies [ORR C.1];
8      b. Submission of all applications for employment of professionals [11
       U.S.C. Section 327(a); LBR 2014-1];
9      c. Submission of all application(s) for payment of insider compensation
       or other remuneration...;
10     d. Submission of all operating reports due under ORR C.2;
       e. filing of 90 day cash flow budget as required by ORR C.2;
11     f. Submission of Motion or notice of agreement to use cash collateral,
       if applicable."

12

13     At the time of the Status Conference on April 11, 2013, the Debtor had

14  complied with all of these requirements.  The Scheduling Order goes on to require

15  that the Debtor file a status report one week in advance of any status conference.  At

16  the first status conference, the Bankruptcy Court did not require any such status

17  report, instead inquiring of the Debtor and the Office of the United States Trustee (the

18  "U.S. Trustee") as to whether the above requirements had been met.  The U.S.

19  Trustee, represented by Kristen Mihelic, indicated that no further documents were

20  needed.  The U.S. Trustee did indicate that the Debtor should consider amending

21  Schedules B and D in its bankruptcy filing.  The Bankruptcy Court did not indicate

22  that any violation of the Scheduling Order had taken place and continued the hearing

23  to July 18, 2013, instructing the Debtor to file a Disclosure Statement and Plan, set

24  a claims bar date and amend Schedules B and D (See NOL Exhibit D, a true and

25  correct copy of the Minute Order for the April 11, 2013 Status Conference).  The

26  Debtor complied with the requirement to set a claims bar date.  The Debtor complied

27  with the requirement for the Debtor to amend its schedules.  The Debtor did not

28  comply with the requirement to file a Disclosure Statement and Plan.  However, there

1   was a significant justification for this.  Between April 11, 2013 and July 18, 2013,

2   Indymac had filed a relief from stay, the Debtor had opposed it, a preliminary hearing

3   was held, the relief from stay was granted and Debtor eventually had the relief from

4   stay overturned on appeal.  The District Court's order was entered on June 28, 2013

5   and the Bankruptcy Court set a status conference for July 11, 2013 to consider how

6   to proceed with the relief from stay hearing (See NOL Exhibit E, a true and correct

7   copy of the Bankruptcy Court's Order setting the relief from stay status conference).

8    These significant changes in circumstances prevented the Debtor from being able to

9   prepare a disclosure statement and plan, as the issue of ownership of the Subject

10   Property is the cornerstone of any plan of reorganization, and this issue was in flux

11   until June 28, 2013.

12       At the July 18, 2013 hearing, the Bankruptcy Court once again did not require

13   a written status report.  Instead, the Bankruptcy Court inquired of the U.S. Trustee

14   whether any documents were outstanding and inquired of the Debtor why a plan and

15   disclosure statement had not been provided.  Satisfied with the Debtor's explanation,

16   the Bankruptcy Court gave the Debtor until July 22, 2013  to file its disclosure

17   statement and plan.  No other requirements were requested of the Debtor other than

18   to file expert's reports by July 25, 2013 in relation to the ongoing relief from stay

19   dispute.  The Status Conference was continued to September 5, 2013 at 11:00 a.m.

20   (See NOL Exhibit F, a true and correct copy of the July 18, 2013 minute order) The

21   Debtor did comply with the deadline to file its disclosure statement by filing the same

22   along with a plan of reorganization on July 22, 2013 (See NOL Exhibit G, a true and

23   correct copy of the Bankruptcy Court's docket in the underlying bankruptcy, Docket

24   No.'s 76 and 77).

25       The September 5, 2013 hearing was continued by stipulation to October 3,

26   2013 (See NOL Exhibit G, Docket No. 93).  Prior to the October 3, 2013, Indymac

27   filed an opposition to the Disclosure Statement along with a suggestion to the

28   Bankruptcy Court that the entire case should be converted due to the Debtor's

1  inability to reorganize without the Subject Property (See NOL Exhibit G, Docket No.
2  128). The stay pending appeal entered by the District Court ensured that the Subject
3  Property would remain under Debtor's control at least until the October 3, 2013
4  hearing (See NOL Exhibit H, a true and correct copy of the District Court's Order
5  Staying the foreclosure). Also prior to the October 3, 2013, the Bankruptcy Court
6  issued a tentative ruling that allowed the Debtor time to revise its disclosure statement
7  and plan in light of the fact that the Bankruptcy Court had granted relief from stay
8  (See NOL Exhibit I, a true and correct copy of the tentative ruling). The tentative
9  ruling made absolutely no mention of the possibility of a conversion for any reason.
10  As such, the Debtor had no reason to believe that the issue of conversion would be
11  entertained by the Bankruptcy Court. Finally, prior to the October 3, 2013 hearing,
12  the Debtor submitted a status report informing the Bankruptcy Court that repairs had
13  been commenced on the Subject Property in order to deal with the oncoming rainy
14  season and ensure that the Subject Property was being maintained for the benefit of
15  the estate (See NOL, Exhibit J, a true and correct copy of the status report). This was
16  partially in response to Indymac's claims that the Subject Property was under
17  imminent danger due to the upcoming rainy season.

18      At the October 3, 2013 status conference, the Bankruptcy Court continued
19  misleading the Debtor by going through the various scheduling issues related to the
20  submission of a first amended disclosure statement and plan. Before the Court
21  finalized the time and date for a continued hearing, Indymac requested an opportunity
22  to be heard. During Indymac's counsel's impassioned speech, Indymac raised **for the
23  first time** the issues of late filed operating reports, the issue of missing operating
24  reports, the issue of the late filed status report and repeated the issue of the Debtor's
25  inability to reorganize. The Bankruptcy Court then made a show of reviewing the
26  docket and pulling various documents for review. The Bankruptcy Court then
27  allowed the Debtor, with no prior warning, to oppose the sua sponte conversion of the
28  case. It was clear that no amount of oral argument would sway the Bankruptcy

1  Court's mind. After rejecting the Debtor's arguments, the Bankruptcy Court set forth
2  its all too well organized reasons for converting the case.  It is clear that the
3  Bankruptcy Court had anticipated conversion prior to the hearing but had not deemed
4  it necessary to forewarn the Debtor of this possibility. The Debtor has requested an
5  expedited transcript of hearing, however, the Debtor has been informed that the
6  transcript will not be available until late this week, possibly after the hearings on the
7  other pending appeal and after the motion to dismiss the adversarial action pending
8  before the Bankruptcy Court (See Declaration of Gustavo E. Bravo).

9        After the hearing was concluded, the Bankruptcy Court prepared its own order.
10  The Order Converting the Case To One Under Chapter 7 (the "Conversion Order")
11  is attached to the Debtor's NOL as Exhibit K.    The Conversion Order set forth the
12  Bankruptcy Court's findings as "cause" to convert the case.  First and foremost, the
13  Bankruptcy Court indicates that it found that Debtor had violated Paragraph 3 of the
14  Scheduling Order.  The reason for this violation is Debtor's filing of its status report
15  on October 3, 2013, the same date as the continued status conference.  No reason was
16  given as to why this constituted "cause" for conversion or how this delay adversely
17  affected anybody.   Indeed, Indymac sought to use the contents of the status report,
18  namely that the Debtor had commenced repairs, to its own advantage somehow
19  finding the gall to argue that repairs to the Subject Property, which all parties
20  involved have agreed would increase the value by at least $500,000, actually
21  increased Indymac's risk.

22        The Bankruptcy Court then determines that the Debtor has violated Paragraph
23  2.d. of the Scheduling requiring Debtor to be current on Monthly Operating Reports
24  ("MORs").  The Bankruptcy Court notes that the Debtor was late for its May MOR
25  when it was filed on July 16, 2013.    This issue was not raised at the July 18, 2013
26  status conference.  No opportunity was given to the Debtor to explain why the report
27  was late and no explanation was given as to how the filing of a late operating report
28  could be considered "cause" for conversion as the United State Trustee ("U.S.

1   Trustee") had not previously claimed that the late filed operating report had been a
2   concern to the U.S. Trustee or any of the Debtor's creditors.  This would be
3   particularly true because the Subject Property is not leased.  Next, the Bankruptcy
4   Court indicates that the Debtor had failed to file MORs for July or August, 2013. The
5   fact is, the Debtor had filed its July MOR on September 11, 2013 at docket number
6   114.[1]   As to the August MOR, the Debtor acknowledged at the hearing that the
7   reports was late in being filed, however, the Debtor believes there was significant
8   justification for the lateness of the August MOR (and indeed for previous late filed
9   reports).  The August MOR was due on September 20, 2013.  As provided above, the
10  Bankruptcy Court granted relief from stay to Indymac on September 18, 2013.  The
11  Debtor was given to September 19, 2013 to obtain a stay pending appeal, or the
12  Subject Property would be foreclosed upon that same day.  The Debtor obtained an
13  order staying the foreclosure from this Court and was then given until September 27,
14  2013 to file its appellate brief.[2]  The status conference took place just four business
15  days after the Debtor submitted its brief.  Debtor requested an opportunity to have an
16  evidentiary hearing on the "causes" raised by Indymac and latched onto by the
17  Bankruptcy Court and offered to have the August MOR on file the same day.  The
18  Bankruptcy Court refused to give any such opportunity, preferring to grant to itself
19  the extraordinary relief of converting the case to chapter 7 on its own motion and on
20  a sua sponte basis.

21      The Bankruptcy Court then stated that it had disapproved the Debtor's
22  Disclosure Statement.  The main reason for the Bankruptcy Court's rejection of the
23  Disclosure Statement is because the Bankruptcy Court has granted relief from stay

24

25  _____

26  [1] The Debtor has previously argued that the Bankruptcy Court has developed a clear bias
    against the Debtor, but to have a Bankruptcy Court ignore a filing in its own docket is, to say the
27  least, clear cause for concern.

28  [2] The Debtor's appellate brief consisted of 38 pages of points and authorities along with two
    separate notices of lodgment which set forth the record on appeal as best as possible on a shortened
    briefing schedule.

EX PARTE MOTION FOR STAY PENDING APPEAL

on the Subject Property and the Bankruptcy Court anticipates that the Subject Property should be foreclosed on shortly. The Bankruptcy Court comfortably ignores the fact that the District Court has previously granted an appeal reversing the Bankruptcy Court's previous relief from stay order or that the Bankruptcy Court's second order on relief from stay is again before the District Court for another appeal. Apparently, the District Court's previous reversal and the second, potential reversal of a relief from stay order should not be given any weight. The Bankruptcy Court then noted that the Debtor's most recent operating report showed a post-petition loss totaling $83,267.01 as of June 30, 2013 with no business income. The Bankruptcy Court also comfortably ignores the fact that the Debtor had sought to put into evidence a cashier's check for $450,000 that was submitted as evidence of the availability of funds to cover any and all expenses and that the Subject Property has increased in value over time so as to potentially cover any of the alleged losses (See NOL Exhibit L, a true and correct copy of the Debtor's Trial Exhibits[3]). As provided above, the Bankruptcy Court has intentionally prevented the Debtor from having any such evidence admitted into the record. The Bankruptcy Court notes that no payments have been made to Indymac on a post-petition basis. The Bankruptcy Court once again comfortably ignores the fact that the Debtor has offered adequate protection payments to Indymac consistently throughout the relief from stay process starting with its filing on April 25, 2013 (See NOL Exhibit G, Docket Number 25), significantly increased its offer on May 29, 2013 (See NOL Exhibit G, Docket Number 40), repeated this offer on July 5, 2013 (See NOL Exhibit G, Docket Number 64) and attempted to present evidence of adequate protection offers at every evidentiary hearing held. The Bankruptcy Court also ignores that Indymac has refused to accept any such offers and that the Bankruptcy Court has refused to order any such payments to be made and accepted. The Bankruptcy Court next notes in

---

[3] The Debtor has previously submitted a copy of the cashier's check to the District Court as part of the record from the Second Appeal, NOL Exhibit B, Docket No. 11)

1    its Conversion Order that the Debtor had not commenced repairs of the alleged water

2    intrusion despite the approaching rainy season.  The Bankruptcy Court comfortably

3    continues to ignore the fact that the Debtor had offered to present testimony regarding

4    the Debtor's efforts to identify a solution to the alleged water intrusion issue, had

5    identified the best way to do so and had commenced repairs as of the status

6    conference including the erection of scaffolding (See NOL, Exhibit J).  The Debtor

7    informed the Court that repairs were anticipated to be completed within ten days.  As

8    provided below, the Debtor anticipates that repairs will, in fact, be finalized no later

9    than October 16, 2013.   Despite the overwhelming evidence to the contrary[4], the

10   Bankruptcy Court found that there is a substantial and continuing loss to or

11   diminution of the estate and that the absence of a reasonable likelihood of

12   rehabilitation existed based on the record available to the Bankruptcy Court.  It is

13   necessary to point out that the Bankruptcy Court relied upon its Scheduling Order as

14   allegedly providing notice to the Debtor of the potential conversion, however, the

15   Scheduling Order fails to provide that it is putting the Debtor on notice of potential

16   conversion under the grounds of continuing loss or the absence of a reasonable

17   likelihood of reorganization.

18        The Bankruptcy Court has made the determination of continuing loss and

19   inability to reorganization despite the fact that the Bankruptcy has consistently

20   manipulated the record against the Debtor, refusing to allow the Debtor to present any

21   evidence of good faith, any evidence of the Debtor's ability to reorganize and any

22   evidence as to the source of funds to reorganize.  As the District Court will recall, the

23   Debtor was prevented from offering any evidence of good faith in the original relief

24   from stay motion because the issues of bad faith and inability to reorganize were first

25   raised in Indymac's reply (See NOL Exhibit A, Docket No. 5).  When the Debtor

26   requested an evidentiary hearing to present such evidence, the Bankruptcy Court

27

28        [4] The fact that the Bankruptcy Court has refused to allow such evidence into the record does
not mean that such evidence does not exist.

refused the request and claimed, unbelievably, that the Debtor should have been aware that those issues would be raised on reply and should have anticipated these unknown arguments in its opposition[5]. When the Bankruptcy Court had the relief from stay motion returned to it by the District Court after its initial ruling was overturned, the Bankruptcy Court at first indicated that good faith, ability to reorganize and evidence of availability of funds would be relevant and that it would allow the Debtor's representative, Kamran Banayan, to testify on those issues once the issue of valuation was fully dealt with. The Bankruptcy Court then refused to allow such testimony because, in the Bankruptcy Court's view, the only issue before the Bankruptcy Court on remand was the value of the Subject Property. The Bankruptcy Court then ignored the valuation issue and found that bad faith still existed and valuation was not a consideration in that finding. Amazingly, the Bankruptcy Court used the Section 341 testimony of Mr. Banayan against the Debtor despite never allowing the Debtor to call Mr. Banayan to the stand (See NOL Exhibit B, Docket No. 11). Finally, at the status conference, Indymac was allowed to argue the same issues of bad faith, inability to reorganize and the lack of funds without notice and without having requested a hearing. Not surprisingly, the Debtor's request for an evidentiary hearing on this matter was summarily denied.

C.   *Current Status of Subject Property and Repairs.*

As the Debtor indicated in its status report, the Debtor commenced repairs prior to the Status Conference. It is anticipated that all repairs will be substantially complete no later than October 17, 2013. The Debtor believes, based on its communications with specialist subcontractors, Debtor's own extensive and time consuming research and having Aviara complete the work at Debtor's expense, that the repairs will have resolved the issues related to the alleged water intrusion. Perhaps just as important as preventing further water intrusion, the completion of the

---

[5] If this is to be the case for all bankruptcies, debtors will need more than attorneys, they will need clairvoyant psychics.

1   repairs will have increased the value of the Subject Property by no less than

2   $500,000[6].  Whether the value prior to the repairs was $4,300,000 or $5,300,000

3   under the competing valuations of Indymac and the Debtor, the value of the Subject

4   Property will have increased to between $4,800,000 and $5,800,000.  The increase

5   in value means that the Debtor has significant equity in the Subject Property, that

6   there has not been any ongoing loss and that adequate protection payments are

7   immediately available through cash payments to the Debtor.  In addition, the Debtor

8   has presented evidence to the Bankruptcy Court that tends to show that the Subject

9   Property has increased in value during the bankruptcy due to a surging real estate

10  market[7].

11                                    **II.**

12              **LEGAL BASIS FOR STAY PENDING APPEAL**

13  A.   *The Bankruptcy Court's Ruling is a "Final Order" and is Therefore*
14       *Immediately Appealable.*

15          "The district courts of the United States shall have jurisdiction to hear

16  appeals... from final judgments, orders, and decrees..." 28 U.S.C. § 158(a)(1). "The

17  Court has jurisdiction over the appeal of the bankruptcy court's ruling on the

18  automatic stay pursuant to 28 U.S.C. § 158(a)(1)." "An order converting a case under

19  another chapter to one under chapter 7 determines finally the discrete issue to which

20  it is addressed, i.e., whether or not it will be converted." (*In re Rosson*, (9th Cir. 2008)

21  545 F.3d 764, 769).  Moreover, because a conversion to chapter 7 takes control of the

22  estate out of the hands of the debtor, it seriously affects substantive rights and may

23  lead to irreparable harm to the debtor if immediate review is denied. (See *Mason v.*

24  ────────────────

25      [6] The Debtor and Indymac stipulated on the record that the ongoing water intrusion problems
    with the Subject Property's windows resulted in a negative stigma on the Subject Property.  The
26  negative stigma was given a $500,000 value by both Debtor and Indymac's valuation experts.  In
    fact, Indymac's expert had provided a $4,800,000 valuation which did not discuss repairs, only
27  discussing completion of the property to final.

28      [7] Not surprisingly, the Bankruptcy Court refused to admit any such evidence into the record.
    The Bankruptcy Court's bias knows no bounds.  See NOL Exhibit B, Docket No. 11.

1  *Young (In re Young)*, (10th Cir. 2001) 237 F.3d 1168, 1173).  It is established "that a

2  bankruptcy court order converting a case from one under another chapter of the

3  Bankruptcy Code to one under chapter 7 is a final and appealable order." (*In re*

4  *Rosson* at 770).  Therefore, because the Bankruptcy Court's Conversion Order is

5  final, the District Court has jurisdiction to hear this appeal under 28 U.S.C. Section

6  158(a)(1).

7  B.   *Motion For Stay Pending Appeal.*

8        Debtor hereby moves the Court for an order staying the lender's sale of the

9  Real Property pending the outcome of the appeal of the Bankruptcy Court's order

10  denying reconsideration.  (Federal Rule of Bankruptcy Procedure 8005.)  Rule 8005

11  reads, in pertinent part:

12        A motion for a stay of the judgment, order, or decree of a
       bankruptcy judge, for... relief pending appeal must ordinarily be
13       presented to the bankruptcy judge in the first instance.
       Notwithstanding Rule 7062 but subject to the power of the district
14       court... reserved hereinafter, the bankruptcy judge may suspend
       or order the continuation of other proceedings in the case under
15       the Code or make any other appropriate order during the
       pendency of an appeal on such terms as will protect the rights of
16       all parties in interest. A motion for such relief, or for modification
       or termination of relief granted by a bankruptcy judge, may be
17       made to the district court..., but the motion shall show why the
       relief, modification, or termination was not obtained from the
18       bankruptcy judge. The district court... may condition the relief it
       grants under this rule on the filing of a bond or other appropriate
19       security with the bankruptcy court. When an appeal is taken by a
       trustee, a bond or other appropriate security may be required...
20       (*Id.*, emphasis added.)

21
22        This Court has the authority to hear this motion and to grant an order staying

23  Lender's sale of the Real Property pending the appeal because the Bankruptcy Court

24  has already denied the Debtor's oral motion to stay the order.  (*Ibid.*)

25  C.   *Legal Standard for Issuing a Stay Under Federal Rule of Bankruptcy*

26       *Procedure § 8005.*

27        "When deciding whether to issue a discretionary stay pending a bankruptcy

28  appeal, courts use the following four factors: (1) Lender's likelihood of success on the

   merits of the appeal; (2) significant and/or irreparable harm that will come to Lender

---

1  absent a stay; (3) harm to the adverse party if a stay is granted; and (4) where the

2  public interest lies." *In re North Plaza, LLC, supra*, 395 B.R. at 119-120.

3       After reciting the four factors set forth above, the *In re North Plaza, LLC*, court

4  explored the Ninth Circuit District Courts' application of the *Hilton* criteria and found

5  that up until that point the districts disagreed when deciding whether to stay a final

6  bankruptcy court order pending appeal. *In re North Plaza, LLC, supra*, 395 B.R. at

7  120. The court found that some courts required a Lender to show under first factor

8  that he is "likely to succeed" on the merits, rather than merely presenting a

9  "substantial case" (*In re Johnston*,  2007 WL 2684736 [Bankr.E.D.Wash. 2007]),

10  while others held that the four factors are conjunctive, and Lender would not win a

11  stay unless each factor is established by a preponderance of the evidence (*In re: Pon*,

12  1994 U.S. Dist. LEXIS 2559 at *6 [N.D.Cal. 1994]), while still others recited the

13  traditional Ninth Circuit "sliding scale" balancing tests used for preliminary

14  injunctions and temporary restraining orders (*Lynch v. Ca. Pub. Util. Comm'n*, 2004

15  WL 793530, *2, 2004 U.S. Dist. LEXIS 6022 at *6 (N.D. Cal. 2004).

16       After reviewing the different standards, the court found that *Lynch's* "sliding

17  scale" approach ignored the procedural posture of a Rule 8005 stay where the Lender

18  is appealing a bankruptcy court's final determination. "A 'sliding scale' approach,

19  which often results in disproportionately weighting the 'irreparable harm' prong, is

20  appropriate for preliminary injunctions because a court deals with the dispute on first

21  impressions, relies on a less-than-developed factual and legal record, and will

22  ultimately revisit the issue down the road. In contrast, where - as here - a court has

23  taken extensive evidence and briefing and issued a determination on the merits, an

24  interest in finality arises. This finality would be rendered impotent if an enjoined

25  party could always raise the specter of irreparable injury to trump the trial court's

26  order, no matter how unlikely an appellate victory on the merits." *In re North Plaza,*

27  *LLC, supra*, 395 B.R. at 120.

28       Thus, the court considered *In re: Johnston* and *In re: Pon* to be persuasive and

---

EX PARTE MOTION FOR STAY PENDING APPEAL

14

1  required that a moving party show that it is more likely than not he, she, or it will

2  succeed on the merits, whatever the possibility of irreparable injury. *Ibid*.

### III.

### THE FACTS OF THIS CASE SUPPORT THE IMPOSITION OF THE STAY PENDING APPEAL

6      As expressed above, for a stay pending appeal to be entered, the party

7  requesting such a stay must show: (1) Lender's likelihood of success on the merits of

8  the appeal; (2) significant and/or irreparable harm that will come to Lender absent a

9  stay; (3) harm to the adverse party if a stay is granted; and (4) where the public

10  interest lies.

11  *A.    Debtor's Likelihood of Success*

12      The Bankruptcy Court's decision to convert a chapter 11 case to chapter 7 is

13  review for any abuse of discretion (*Pioneer Liquidating Corp. v. U.S. Trustee( In re*

14  *Consol. Pioneer Mortg. Entities)*, (9th Cir. 2001) 264 F.3d 803, 806; *Johnston v. JEM*

15  *Dev. Co. (In re Johnston)*, (9th Cir. BAP 1992) 149 B.R. 158, 160). A bankruptcy

16  court abuses its discretion if it based a decision on an incorrect legal rule, or its

17  application of the law was illogical, implausible or without support in inferences that

18  may be drawn from the facts in the record (*U.S. v. Hinkson*, (9th Cir. 2009) 585 F.3d

19  1247, 1262; *Ellsworth v. Lifescape Med. Assoc's., P.C. (In re Ellsworth)*, (9th Cir.

20  2011) 455 B.R. 904, 914. Nevertheless, the District Court has an independent duty

21  to review de novo whether the Debtor was given due process before the Final

22  Conversion Order was entered (*Owens-Corning Fiberglass Corp. v. Ctr. Wholesale,*

23  *Inc., (In re Ctr. Wholesale, Inc.*, (9th Cir. 1985) 759 F.2d 1440, 1448; *GMAC Mortg.*

24  *Corp. v. Salisbury (In re Loloee)*, (9th Cir. BAP 1999) 241 B.R. 655, 661.

25      *1.    The Bankruptcy Court Denied the Debtor Due Process On the Conversion Order.*

27      11 U.S.C. Section 1112(b)(1) provides that only " on request of a party in

28  interest, and after notice and a hearing" may a case be converted or dismissed (11

---

U.S.C. Section 1112(b)(1)).  Similarly, a sua sponte conversion on dismissal can only be ordered after notice and an opportunity to be heard are provided to the debtor and other parties in interest (*In re Bijelonic* (C.D. Cal 2012) 2012 WL 2263259, *5).  As the Supreme Court has ruled: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.  The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time for those interested parties to make their appearance. (*Mullane v. Cent. Hanover Bank & Trust, Co*, (1950) 339 U.S. 306, 314).  In other words, the reviewing court "must determine whether the notice given to the Debtor was "reasonably calculated" to give him a meaningful opportunity to oppose the conversion if he so desired." (*In re Jackson*, (9th. Cir. BAP 2012) 2012 WL 5416529, *5).[8]

In the instant case, it is clear that the Debtor has not been given notice that would be reasonably calculated to give the Debtor a meaningful opportunity to oppose the conversion of this case.  As provided above, the Bankruptcy Court converted this case on three separate grounds: the Debtor's delayed MORs, the Debtor's late status report and the alleged continuing loss to and diminution of the estate and the absence of a reasonable likelihood of rehabilitation.   There is no denying that Indymac, any other creditor or the U.S. Trustee, have not filed a noticed motion for the conversion of the Debtor's case.  As such, the Debtor has not been provided with the necessary notice required under 11 U.S.C. Section 1112(b)(1). The Bankruptcy Court, instead, converted this matter *sua sponte* in what the Debtor asserts is an attempt to take the Debtor's appeals out of its hands and put them in the hands of a trustee.  Indeed Indymac has already argued in the appeal set for hearing

---

[8]Although this case is not published, it is suitable for citation for whatever persuasive value it may have.

EX PARTE MOTION FOR STAY PENDING APPEAL

1    on October 17, 2013 that the Debtor lacks standing to continue the appeal. As

2    pointed out above, the imposition of an order *sua sponte* does not relieve the

3    Bankruptcy Court of providing the Debtor an opportunity to be noticed and be heard

4    on the motion.

5        The Bankruptcy Court points to the Scheduling Order to claim that the Debtor

6    was on notice of the possibility of a conversion at all times. There are a number of

7    problems with this position. First and foremost, the Scheduling Order makes no

8    mention of the possibility of conversion based on the alleged continuing loss to and

9    diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

10    To the extent the Bankruptcy Court was relying on the Scheduling Order for

11    converting the matter under these grounds, the Bankruptcy Court simply cannot do

12    so as the Scheduling Order is completely silent as to this potential ground for

13    conversion. At most, the Bankruptcy Court could seek to rely upon Indymac's

14    opposition to the Debtor's Disclosure Statement which merely suggested the

15    possibility of a conversion. Obviously, such a suggestion is not a "request of a party

16    in interest" providing for notice and a hearing on a filed motion for conversion.

17    Furthermore, motions to convert are to be served on all creditors (Federal Rules of

18    Bankruptcy Procedure ("FRBP") Rule 2002), that of course was not done here.

19    Clearly then, the Debtor has not had any notice and has not been given a meaningful

20    opportunity to oppose the conversion on the grounds of the alleged continuing loss

21    to and diminution of the estate and the absence of a reasonable likelihood of

22    rehabilitation. Furthermore, the motion was not served on all creditors as is required

23    by the FRBP's.

24        With regards to the conversion under the later MORs and the late filed status

25    conference, the Debtor believes that the notice provided, a generalized scheduling

26    order informing the debtor that a bankruptcy may be dismissed or converted for the

27    debtor's failure to comply with various reporting requirements did not apprise the

28    Debtor of the specific alleged failures of the Debtor and did not give the Debtor a

1   reasonable opportunity to oppose the conversion.  As provided above, neither the
2   Bankruptcy Court, the U.S. Trustee or any creditor had informed the Debtor of any
3   alleged failures or delays prior to the status conference.  The Bankruptcy Court's
4   tentative ruling made no mention of any potential for conversion of the bankruptcy.
5   The Debtor had no notice, prior to the hearing that these issues would be considered
6   during the status conference, in fact, the tentative ruling called for the Bankruptcy
7   Court to provide a further date for the filing of an amended disclosure statement.  The
8   May MOR had been filed late prior to the previous status conference, no mention of
9   its late filing was made at the earlier status conference in July, 2013, to the extent it
10  was late filed at that time, the Debtor was not put on notice that it would be
11  considered as part of a motion to convert the case.  Further, 11 U.S.C. Section
12  1112(b)(2)(B) provides that, where the grounds for converting or dismissing the case
13  include an act or omission of the debtor other than under paragraph (4)(A), the
14  "Bankruptcy Court may not convert a case under this chapter to a case under chapter
15  7" if there exists a reasonable justification for the act or omission and that the act or
16  omission will be cured within a reasonable period of time fixed by the court. (See 11
17  U.S.C. Section 1112(b)(2)).

18          Because the Debtor was not given any notice that conversion was being
19  considered at the status conference, because the issues of the late filed MORs and the
20  late filed status report had never been discussed by the Bankruptcy Court, by any
21  creditor, by the U.S. Trustee or any interested party prior to the status conference, the
22  Debtor could not be prepared to offer any evidence that would show a reasonable
23  justification for the late filed documents.  Further, the Debtor has not been offered
24  any opportunity to file the one document that had not been filed as of the status
25  conference, the August operating report.  All other documents were on file and could
26  be considered by the Bankruptcy Court, the U.S. Trustee and creditors.  Under all of
27  the circumstances, it is clear that the generalized notice provided in the Scheduling
28  Order was not enough to give the Debtor a reasonable opportunity to prepare an

1  objection to the conversion due to the late filed MORs and the late filed status report.

2      2.    *The Bankruptcy Court Abused Its Discretion By Entering The*
3            *Conversion Order.*

4      Although a Bankruptcy Court has discretion to determine if causes exists and

5  how to ultimately dispose of a case, conversion and/or dismissal of a case is clearly

6  a drastic measure and a heavy burden lies on the movant to prove that such relief is

7  warranted and is not premature (*In re State Street Associates, L.P.*, (Bankr.N.D.N.Y.

8  2006) 348 B.R. 627).  What happens then, when the Bankruptcy Court is the moving

9  party?  Is the heavy burden to prove that relief is warranted and not premature

10 removed from the Bankruptcy Court's analysis?  Of course not.  As the Bankruptcy

11 Court has converted this case *sua sponte* and, essentially, on an emergency basis, the

12 Debtor would argue that the burden to show that such extraordinary relief is

13 warranted is all the more necessary.

14     As provided above, the Bankruptcy Court found that "cause" for conversion

15 relied upon three separate findings by the Bankruptcy Court: 1. That the Debtor was

16 late for an MOR in May and that the Debtor had failed to file its most recent MOR

17 for August as of the October 5, 2013 status conference; 2. That the Debtor was late

18 in filing its most recent status report for the October 5, 2013 status conference and 3.

19 That there is substantial or continuing loss to or diminution of the estate and that

20 there is an absence of a reasonable likelihood of rehabilitation.  In reviewing each

21 finding, the Debtor notes that significant errors were made by the Bankruptcy Court,

22 all of which show that the Bankruptcy Court has abused its discretion in converting

23 the case under its own motion and without giving the Debtor an opportunity to defend

24 the motion.  Furthermore the Bankruptcy Court and the Debtor have been in constant

25 contact on the case through the continuing relief from stay, appeal, and hearings on

26 the motion for relief from stay.  After the July 18, 2013 status conference, the Debtor

27 has been in front of the Bankruptcy Court for three evidentiary hearings on July 30,

28 2013, September 10, 2013 and September 18, 2013, accompanied by various filings

1   and the submission of significant evidence on all matters.

2         On the late filed MORs, the Bankruptcy Court pointed specifically to the late

3   filing of the May MOR, the alleged non-filing of the July MOR and the non-filing of

4   the August MOR.  The May MOR was, admittedly late filed.  However, the May

5   MOR was filed before the July status conference and the Debtor's delayed filing of

6   the MOR was not raised at all.  How is it that the May MOR was not an issue worth

7   discussing, at all, in July but rose to the level of "cause" a full three months later.  The

8   answer is clear, it was not cause in July and it is not cause for conversion now.  The

9   Bankruptcy Court then claims that the Debtor never filed its July MOR.  As shown

10  above, the Debtor did file the July MOR.  Clearly an incorrect allegation that a filed

11  MOR was not filed is not "cause" for conversion.  Finally, the Bankruptcy Court

12  relied upon the Debtor's failure to file the August MOR.

13        As expressed above, the Bankruptcy may not convert a case to chapter 7 if the

14  cause for doing so is a debtor's omission "for which there exists a reasonable

15  justification for the act or omission; and that will be cured within a reasonable period

16  of time fixed by the court" (11 U.S.C. Section 1112(b)(2)).  This is a statutory

17  requirement, one that the Debtor was not given.  As provided above, the reason for

18  the late filed MOR for August was well justified as the Debtor was heavily burdened

19  with emergency filings in order to protect the Subject Property.   Furthermore, the

20  Subject Property is not leased, so reporting operations is less significant in this case.

21  Notwithstanding the lack of actual prejudice, the Debtor offered to bring the

22  operating report current on the same day as the first hearing on any alleged omission

23  and was not given the opportunity to do so.   As such, the Debtor believes that the

24  Bankruptcy Court committed reversible error in converting the matter due to late

25  MOR's.

26        The same problems exist with the alleged late filing of the status report.   The

27  status report was filed, albeit several days later.  The same time pressures on the relief

28  from stay appeal apply to the late filed status report as they existed for the MORs.

---

EX PARTE MOTION FOR STAY PENDING APPEAL

1    Furthermore the report provided information of the commencement of repairs and the

2    scaffolding of the Subject Property.  This event did not fully occur more than a week

3    before the hearing and therefore the reporting of significant current event as they

4    actually occurred.  Furthermore, the nature of and anticipated commencement of the

5    repairs was part of the testimony the Bankruptcy Court refused to hear during the

6    relief from stay hearings.

7            Despite the late filing, Indymac and the Bankruptcy Court had an opportunity

8    to review the status report. In fact, Indymac attempted to use the status report in a

9    bizarre attempt to claim that the Debtor's commencement of repairs actually placed

10   the Subject Property at risk.  After spending months arguing that the Debtor was

11   placing the Subject Property at risk by not repairing the alleged water intrusion issues,

12   Indymac performed an abrupt about face and argued that the Debtor's repairs were

13   placing the Subject Property at risk by exposing parts of the Subject Property to the

14   elements.  Indymac used the status report to argue a point in direct contradiction of

15   its previous stance. How, then, was the late filed status report harmful to Indymac or

16   any creditor?  It was not.  Instead, the late filed report merely gave the Bankruptcy

17   Court an excuse to convert the case while a pending appeal could reverse the

18   Bankruptcy Court's hard work in granting relief from stay.  Indeed, the Bankruptcy

19   Court once again ignored the Bankruptcy Code's direction that conversion or

20   dismissal should not be granted when a debtor has, or will within reasonable period

21   of time, cure an omission. Basing conversion on one late filed status report is clearly

22   not "cause" for the drastic measure of conversion and in doing so, the Bankruptcy

23   Court has abused its discretion.

24           The final issue is the most glaring evidence of the Bankruptcy Court's abuse.

25   The Bankruptcy Court found that, on the record before it, the Debtor's bankruptcy

26   showed a continuing loss to or diminution of the estate and that there was an absence

27   of a reasonable likelihood of rehabilitation.  The Bankruptcy Court relied upon the

28   granting of relief from stay that will, in its eyes, inevitably lead to the foreclosure on

---

the Subject Property and upon the evidence that the Debtor has seen a continuing loss during the pendency of the Bankruptcy. The problem is that these findings are based on a record that has continuously been manipulated by the Bankruptcy Court itself. As provided in detail above, the Bankruptcy Court has refused to allow testimony and/or accept evidence establishing that:

1. The Debtor had received a $450,000 cashier's check from Aviara, eliminating any current losses and, in fact, giving the Debtor the necessary funds to reorganize;

2. That the Subject Property has increased in value over the time that the Debtor has been in bankruptcy. The Debtor's latest offer of proof was a valuation by David Eshelman that placed the "as is" value of the Subject Property at $5,800,000, over $700,000 more than the original value provided by an original "as is" appraisal of $5,100,000, again eliminating any alleged loss;

3. That the Debtor has been doing necessary testing, obtaining quotes and conferring with experts in order to ensure that the repairs done to the Subject Property could be done correctly and would eliminate the alleged water intrusion issue. The Debtor submitted evidence that those repairs had commenced, a fact that the Bankruptcy Court ignored in determining in its Conversion Order that the Debtor had failed to start those repairs;

4. That the Debtor was to have Kamran Banayan testify as to the Debtor's ability to reorganize in good faith and the Debtor's intent, from the commencement of the case to effectively reorganize as opposed to merely delaying Indymac, but the Bankruptcy Court refused to allow his testimony; and,

5. That the Debtor offered a valid and reasonable disclosure statement and plan that was dependant upon the Debtor retaining the Subject Property.

1    The fact that the Bankruptcy Court granted relief from stay on the
2    Subject Property is certainly an obstacle to such a plan.  However, the
3    Bankruptcy Court ignored the fact that the relief from stay order is
4    currently on appeal and the effect of that order has been stayed by the
5    District Court.

6        The sad truth is, the Bankruptcy Court has continuously prevented the Debtor
7    from presenting any evidence as to the same exact reasons upon which the
8    Bankruptcy Court has based its order on conversion.  The true record, as previously
9    presented to the District Court in its previous appeals (See NOL Exhibits A and B),
10   establishes that the Debtor has a fantastic property in the Subject Property, that the
11   Debtor has the funds to finalize the property and take it to sale or reorganization
12   within the next three years, that the Debtor can do an effective reorganization that
13   will pay all creditors in full and that the Debtor would do so if only it was given a fair
14   and reasonable opportunity to do so, an opportunity that the Bankruptcy Court has
15   denied the Debtor at every turn.  Furthermore, the Debtor can make periodic adequate
16   protection payments but the Bankruptcy Court has refused to set these payments
17   despite numerous requests by the Debtor over the past six months.  This is not how
18   a debtor should be treated in bankruptcy and is counter to the basic tenets of
19   bankruptcy reorganization under chapter 11, wherein a debtor is to be given every
20   opportunity to get a fresh start and the Bankruptcy Code should be weighted in favor
21   of giving a debtor the benefit of the doubt.   The fact that the Bankruptcy Court has
22   once again refused to allow the Debtor to present evidence of the ability to reorganize
23   on its behalf by giving the Debtor no notice of a hearing to convert on these grounds
24   shows, again, that the Bankruptcy Court has committed an abuse of discretion.

25       The District Court may also wish to consider the Bankruptcy Court's options
26   at the time of the status conference.  It could have done nothing, allowing the appeals
27   to go forward and setting a new hearing date for the status conference and the
28   disclosure statement, allowing the Debtor to complete the pending appeals.  It could

1  have set a noticed hearing for the dismissal or conversion of the case, allowing the
2  Debtor to complete the pending appeals while also giving all interested parties due
3  process on the conversion and/or dismissal.   The Bankruptcy Court could have
4  dismissed the bankruptcy with a bar to refiling, which would have left the appeals in
5  the hands of the Debtor.   Instead, the Bankruptcy Court chose the extraordinary
6  remedy of converting the Debtor's case.   The result is that the Debtor has potentially
7  lost the control of the appeals, has left the trustee unprepared to handle the pending
8  appeals and because the Bankruptcy Court's order for relief from stay continues to
9  apply in the event of a conversion the Trustee currently has little, if anything, to
10  actually administer.   The facts is the Bankruptcy took the only course of action that
11  would jeopardize the pending appeals and would take the prosecution of those
12  appeals out of the Debtor's hands.   This course of action by the Bankruptcy Court
13  shows that the Bankruptcy Court has committed a clear and alarming abuse of
14  discretion by converting this case.   For all these reasons, the Debtor's Conversion
15  Order should be reversed and this appeal should be granted.

16  B.    *Significant and Irreparable Harm Will Come to Debtor Absent A Stay*

17        It is axiomatic in California that Real property is usually deemed "unique," so
18  that injury thereto or loss thereof cannot be compensated in damages, and injunctive
19  relief is therefore readily granted in cases that involve real property. See
20  Cal.Civ.Code § 3387 (damages presumed inadequate for breach of agreement to
21  convey real property).   Further, "[l]osing (real property) through foreclosure is an
22  irreparable injury." Wrobel v. S.L. Pope & Assocs., 2007 WL 2345036, *1 (S.D.Cal.
23  2007).

24        Further, the Subject Property is a beautiful home in a highly desirable area.
25  The evidence now before the District Court shows that the beauty and uniqueness of
26  the Subject Property is reflected in its current "as is" value of $5.3 Million based on
27  Bouman's May appraisal (an "as is" appraisal by David Eshelman set the "as is" value
28  at $5,800,000 as of August 20, 2013) and the $5.8 to $6.3 Million "when complete"

---

1  value may now be established.  Allowing the conversion to occur at this time, would
2  be inequitable and would result in a travesty for the Debtor and its owner who has not
3  only put in more than a million dollars into the Subject Property but, as the
4  Bankruptcy Court acknowledged, has put his blood, sweat and tears into the Subject
5  Property over the past seven years.  The Debtor believes a plan of reorganization
6  where the Subject Property is maximized and the Debtor either sells the Subject
7  Property or refinances the Subject Property in order to pay all creditors in full and
8  realizes the full value of the Subject Property is the best available result.  The Court
9  refuses to allow this to happen and the Subject Property is now in imminent danger.
10  The Bankruptcy Court would have the Debtor lose control of this case at a crucial
11  period of time, with the Debtor's appeal on the relief from stay order pending before
12  this Court, the adversarial action pending before the Bankruptcy Court facing a
13  motion to dismiss and a motion for a preliminary injunction all at a time when the
14  Debtor has undertaken significant repairs to the Subject Property which only makes
15  the Subject Property that much more valuable.
16       Although the Trustee has not yet made a decision on whether to seek time from
17  the Bankruptcy Court to list the Subject Property for sale, it is an issue that should
18  still be in the Debtor's hands.  Further, the Trustee has indicated that it cannot
19  possibly prepare for the hearings that are currently pending before this Court and the
20  Bankruptcy Court.  Indymac is arguing that the Debtor lacks standing to appear at
21  these hearings.  If that is the case, the Debtor's valuable estate has been effectively
22  left without a responsible person to care for it, at least for the time being.  The harm
23  that may result from this rudderless estate, specifically the loss of its most valuable
24  asset in the Subject Property, would be devastating to the Debtor and to the Debtor's
25  estate.
26  C.    *Harm To The Adverse Party If A Stay Is Granted.*
27       By comparison the risk to Indymac is almost non-existent.  If the District Court
28  grants a stay on the Conversion Order, Indymac will be faced with the situation where

EX PARTE MOTION FOR STAY PENDING APPEAL
25

1  it must litigate the pending appeal on the relief from stay order and the adversarial

2  action on the merits against a prepared and interested party, rather than facing an

3  empty seat.

4      As has previously been discussed, from a strictly formalistic perspective, the

5  only harm that will come to IndyMac Ventures if a stay is granted is that it may (and

6  only assuming, arguendo, that the Debtor is unsuccessful in its appeal) have to wait

7  just a little bit longer to either foreclose on the property or have the Trustee liquidate

8  the same. Or, taking a dimmer yet broader and real-world view of IndyMac Ventures'

9  motivations, it will be deprived of the vast (approximately $1,900,000) windfall that

10 it will receive if its sale of the Real Property is allowed to proceed.  Furthermore any

11 claimed harm can be obviated by the ordering of adequate protection payments.

12 D.    Where The Public Interest Lies.

13     The *In re North Plaza, LLC,* court considered that the "public interest" lies in

14 "speedy and accurate bankruptcy proceedings." *In re North Plaza, LLC, supra*, 395

15 B.R. at 127.  Here, the Bankruptcy Court certainly desired a "speedy" bankruptcy

16 proceeding because that would allow it to clear a case from its calendar that it has

17 clearly not favored from its inception and it will, possibly, make its determinations

18 on relief from stay appeal-proof.

19     But the *In re North Plaza, LLC* Court's use of the word "and" in the above-

20 quoted language requires that "speedy" be accompanied by and be consistent with

21 "accurate."  This means that bankruptcy proceedings must not be so speedy that

22 things are overlooked and issues such contradicting evidence can be pushed aside by

23 court hell bent on a speedy conclusion.  Yes, the Bankruptcy Court has the desire to

24 a speedy bankruptcy proceeding by a debtor; but the Debtor has an equal right to an

25 accurate one.  As provided above, conversion requires adequate notice and an

26 opportunity for a meaningful hearing, even where said conversion is being proposed

27 *sua sponte*.  As the Court has made the determination of conversion on incorrect and

28 now completely controverted evidence, the fair and accurate determination of facts

1   has been sacrificed for the interest of a speedy process.   Here, the appropriate result
2   should have been to allow Indymac, if it is so inclined to file a noticed motion for
3   conversion of this case.  If Indymac can prove its case after allowing the Debtor a full
4   and complete opportunity to rebut Indymac's claims, then the appropriate process will
5   have been followed and the proper result reached.   Here, that has not occurred.

6                                         **IV.**

7                                  **CONCLUSION**

8            The Debtor respectfully requests that Court issue a stay of the Conversion
9   Order's effect pending a hearing on the appeal.   The Debtor believes there is a
10  likelihood of success on appeal as, at the very least, the Bankruptcy Court has denied
11  the Debtor due process and has abused its discretion in granting a conversion where
12  "cause" does not exist and that the inevitable harm to the Debtor would be irreparable
13  and significant due to the unique nature of all real property and particularly the
14  Subject Property, that the harm to the Movant is relatively insignificant and that the
15  public interest for accurate determinations all support the imposition of this stay.

16

17  Dated: October 15, 2013                    /s/ John L. Smaha
18                                         John L. Smaha
                                           Gustavo E. Bravo, Esq.
19                                         SMAHA LAW GROUP
                                           Attorneys for YBA Nineteen, LLC
20  W:\YBA Nineteen, LLC\Appeal.Conversion\100.Ex.Parte.Appeal.Stay.wpd
21
22
23
24
25
26
27
28

---

EX PARTE MOTION FOR STAY PENDING APPEAL
27