1
2
3
4
5
6
7
8        **UNITED STATES DISTRICT COURT**
9        **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   In Re:
12   YBA NINETEEN, LLC,
13            Debtor.
14
15   YBA NINETEEN, LLC,
16            Appellant,
17   v.
18   INDYMAC VENTURE, LLC,
19            Appellee.
20

Civil No. 13cv2426-WQH-RBB

Bankruptcy No. 13-00968-LA11
[Bankruptcy Appeal #3]

**ORDER**

HAYES, Judge:

        The matter before the Court is the appeal of the "Order Converting Case to One Under Chapter 7" ("Order Converting Case"), issued by the Bankruptcy Court on October 4, 2013. (ECF No. 1).

**I.    Background**

        This is the third appeal to this Court in this bankruptcy proceeding. *See In re YBA Nineteen*, S.D. Cal. Case No. 13cv1326-WQH-RBB; *In re YBA Nineteen*, S.D. Cal. Case No.

13cv2239-WQH-RBB.[1]  The Court presumes familiarity with its Orders issued in the other appeals.

**A.   Proceedings Prior to the October 3, 2013 Status Conference**

Debtor, YBA Nineteen, LLC, filed a voluntary Chapter 11 petition on January 31, 2013.  On March 6, 2013, the Bankruptcy Court entered an Order entitled, "Order Re: Chapter 11 Petition 1) Setting Status Conference; 2) Setting Compliance Deadlines; 3) Setting Disclosure Statement and Plan Filing Deadlines; and 4) Setting Sanctions, If Appropriate, Including Dismissal, Conversion or Appointment of a Chapter 11 Trustee or Examiner Because of Noncompliance with Above-Reference[d] Requirements" (the "Scheduling Order").  (Notice of Lodgment Supp. Mot. for Stay, Ex. C at 1, ECF No. 4-2 at 14).  The Scheduling Order states:

> The above-referenced Debtor filed a petition for reorganization under Chapter 11.  To insure compliance with the numerous federal and local rules governing bankruptcy procedure as well as the United States Trustee's Operating and Reporting Requirements for Chapter 11 cases ('ORR') and for other good cause appearing, the Court hereby
>
> 1.    ORDERS that pursuant to 11 U.S.C. § 105(d), the Court will hold a status conference on this Chapter 11 case on 4/11/13 ... at which the Debtor and the United States Trustee shall appear.
>
> 2.    ORDERS that prior to the above-referenced status conference, the Debtor shall have complied with all applicable ORR, federal and local bankruptcy rules governing Chapter 11 cases, including, but not limited to ... d. Submission of all operating reports due under ORR C.3.....
>
> 3.    ORDERS that no later than one week in advance of this status conference and before every continued hearing of this Chapter 11 status conference, the Debtor is directed to file and serve on the U.S. Trustee a report addressing the status of each of the above-referenced requirements and any other requirements imposed by the Court at a previous status conference in this case.  Failure to file this status report or comply with the requirements ordered by the Court may be cause to dismiss or convert this case, appoint a Chapter 11 trustee or examiner or impose other appropriate sanctions as permitted by 11 U.S.C. §§ 105(a) and 1112(b).

*Id*. at 2.  The United States Trustee's Operating and Reporting Requirements for Chapter 11

---

[1]  In the second appeal, the Court issued a stay preventing Appellee IndyMac Venture, LLC from taking any further action as to the real property at issue.  (S.D. Cal. Case No. 13cv2239, ECF No. 6).

cases ("ORR"), which are incorporated in the Scheduling Order, state that a debtor must file Monthly Operating Reports no later than twenty calendar days after the close of each month. (Appellee's Notice of Lodgment, Ex. 3 at 65 ¶ C.3., ECF No. 22).

On April 11, 2013, the Bankruptcy Court conducted a status conference. (Notice of Lodgment Supp. Mot. For Stay, Ex. G, ECF No. 4-2 at 26). The Bankruptcy Court docket reflects that Debtor did not file a status report prior to the April 11, 2013 status conference, and Debtor filed the operating report for February (which was due on March 20, 2013) on the day of the conference, April 11, 2013. *Id*. The Bankruptcy Court's Minute Order from the April 11, 2013 status conference states: "Hearing continued to 7/18/13 at 10:30 to hear the [Disclosure Statement] & Plan. Debtor to set the claims bar date. Amend Sch[edules] B & D." (Notice of Lodgment Supp. Mot. For Stay, Ex. D, ECF No. 4-2 at 17).

On April 22, 2013, Debtor filed the operating report for March. (Notice of Lodgment Supp. Mot. For Stay, Ex. G, ECF No. 4-2 at 27). On May 8, 2013, Debtor filed the operating report for April. *Id*. at 28. On May 31, 2013, Debtor filed an amendment to Schedules A and B (although Debtor did not amend Schedule D). *Id*. at 30. On July 16, 2013, Debtor filed the operating reports for May (which was due on June 20, 2013) and June. *Id*. at 33. On July 18, 2013, the Bankruptcy Court conducted a status conference. *Id*. at 34. The Bankruptcy Court docket reflects that Debtor did not file a disclosure statement, a plan or a status report prior to the July 18, 2013 status conference. *Id*. The Bankruptcy Court's Minute Order from the July 18, 2013 status conference states: "Hearing continued to 9/5/13 at 11:00, [Disclosure Statement] to be filed by 7/22/13." (Notice of Lodgment Supp. Mot. For Stay, Ex. F, ECF No. 4-2 at 21).

On July 22, 2013, Debtor filed a Disclosure Statement pursuant to 11 U.S.C. § 1125. (Notice of Lodgment Supp. Mot. For Stay, Ex. G, ECF No. 4-2 at 35). On August 12, 2013, the Bankruptcy Court issued an order scheduling a status conference and hearing on the Debtor's Disclosure Statement for October 3, 2013. *Id*. at 38.

On September 11, 2013, Debtor filed the operating report for July (which was due on August 20, 2013). *Id*. at 42.

On September 19, 2013, Appellee and secured creditor IndyMac Venture, LLC filed an "Opposition to Approval of Disclosure Statement and Suggestion That Case Be Converted to a Case under Chapter 7 of the Bankruptcy Code at Case Status Hearing." (Appellee Notice of Lodgment, Ex. 4, ECF No. 22 at 73). This document states:

> The Court is ... considering the Debtor's chapter 11 status hearing. Due to the lack of case progress, the enormous administrative expenses accrued in the estate and the continuing loss and diminution in the estate, IndyMac suggests that the Court convert Debtor's case to chapter 7. As the Court knows, the Debtor has refused to engage in repairs and remediation to the property while the property remains under the threat of foreclosure. The Debtor's appeal now threatens to extend the duration of the case while IndyMac is stayed from foreclosing. The duration of the case is now extending into the Southern California rainy season in which IndyMac's collateral will be exposed to further moisture intrusion and rot.
>
> All the foregoing suggests a need for a change in case management to break the impasses that have developed. The case should be converted to chapter 7 to facilitate a resolution of the case.
>
> Wherefore, IndyMac Venture, LLC respectfully requests that the Court deny approval of Debtor's disclosure statement and convert the ... case to a case under chapter 7 of the Bankruptcy Code.

*Id.* at 75.

On September 27, 2013, the Bankruptcy Court issued a Tentative Ruling denying approval of the Debtor's Disclosure Statement. (Notice of Lodgment Supp. Mot. For Stay, Ex. I, ECF No. 4-2 at 54). The Bankruptcy Court stated that "a plan based on retention of the property is problematic at best"; the treatment of the claims of Mr. Banayan and his company Avaria are "inconsistent"; "the promises made to creditors under this plan" are "illusory"; and there is no remedy provided if monthly adequate protection payments to IndyMac are not made or the property is not repaired. *Id.*

On October 3, 2013, the day of the status conference, Debtor filed a status report (which was due on September 26, 2013). (Notice of Lodgment Supp. Mot. For Stay, Ex. J, ECF No. 4-2 at 56-57). The status report states that Debtor is "willing to submit on the tentative ruling of the Bankruptcy Court." *Id.* at 56. The remainder of the two-page status report argues that "IndyMac's improperly proposed motion to convert the case to chapter 7 should be denied." *Id.* at 57.

The Bankruptcy Court docket reflects that Debtor did not file an operating report for August (which was due on September 20, 2013) or September as of the October 3, 2013 status conference or any time thereafter.  (Notice of Lodgment Supp. Mot. For Stay, Ex. G, ECF No. 4-2 at 47).

**B.     October 3, 2013 Status Conference**

At the October 3, 2013 status conference, counsel for Appellee IndyMac stated:

> Your Honor, we came down here today and are appearing in our capacity as the estate's largest and perhaps only non-insider creditor in this case to urge the Court, in connection with the case status conference, to convert the debtor's case to Chapter 7 based on the record that's before the Court today.
>
> The basis for conversion under these circumstances -- there's no motion pending -- is fundamentally lack of compliance with the Court's March 6, 2013 status conference order which gives notice of the potential for conversion or dismissal and related cause under five subsections of section 1112(b)(4).

(Suppl. Notice of Lodgment Supp. Mot. Stay, Ex. 7 at 5-6, ECF No. 20-8 at 6-7).  Counsel for IndyMac argued that "there's ... lack of compliance with [the Bankruptcy Court's March 6, 2013] status conference order"; the requirement that a status report be filed seven days before any continued status hearing was violated; the "monthly operating reports are missing" or "chronically late throughout the entire case"; the most recent monthly operating report on file was the July report, which is "demonstrably false and contains a false financial statement"; "there was an initial date set for disclosure statement in this case [and] the debtor just blew through the deadline to file the disclosure statement, didn't file it, wound up at the last hearing on case status, and you gave the debtor a reprieve and you gave the debtor a new deadline"; "[a]fter nine months the debtor has not paid a dime of adequate protection to my client"; "[i]f this case fails, which it's been on the edge of failing consistently, and there is no money in this estate, we will have a house that is more exposed to the winter rain than as it presently stands"; "the accrual of administrative expenses is a serious issue in this case and reflects a continuing loss and diminution that, coupled with a lack of prospect of rehabilitation in the case, which was just confirmed this morning by denial of the disclosure statement, is cause for conversion under 1112(b)(4)(A)"; "[IndyMac] would prefer to deal with a disinterested fiduciary who can look at the assets in this estate ... and with whom we

1  can deal to resolve this estate and it's not just an estate which can keep tripping down the

2  calendar without resolution.  And so we support conversion...." *Id.* at 6-11.

3         The Bankruptcy Court then asked counsel for Debtor to "please address that." *Id.* at

4  11.  Counsel for Debtor stated that "there is no noticed motion by IndyMac, I think the

5  appropriate way to proceed...." *Id.*  The Bankruptcy Court stated: "[Y]ou do know that the

6  Court has a continuing OSC on Chapter 11 cases and that there does not have to be a motion

7  by IndyMac.  The Court has made its own motion." *Id.* at 12.  Counsel for Debtor stated:

8         I understand, your Honor.  And if I can get to those points ..., I think ... there
       was a concern ... that there's an ongoing risk to the property, and that's the
9      water intrusion....  The evidence provided to the Court, your Honor, says that
       the repairs are to be finished within ten days and make sure that that water
10     intrusion problem doesn't -- if it exists, doesn't keep existing after that time
       period.  If IndyMac claims that there's not evidence on that issue, your Honor,
11     then perhaps an evidentiary hearing on that should be set a few days out.

12 *Id.* at 12.

13        Counsel for Debtor stated: "if the Court wants further explanation of what is being

14 done and what the process is to protect the property, we'd submit something on rather short

15 notice and would be happy to do so, your Honor....  The operating report for August could

16 be submitted today if the debtor is given time.  And we would make sure that in the

17 future...." *Id.* at 13-14.  The Bankruptcy Court stated: "[Y]our client has not submitted

18 timely operating reports almost as a matter of course." *Id.* at 14.  The Bankruptcy Court

19 noted that the last operating report in the case was submitted for July; it was submitted late;

20 and it was "inaccurate, as [IndyMac's counsel] pointed out." *Id.*  The Bankruptcy Court

21 asked counsel for Debtor if there was "anything further?" *Id.*  Counsel for Debtor stated:

22       [A]t this point putting in a trustee and converting the matter would probably
       create more administrative problems, more issues with the matter so close to
23     being determined on the appeal, on the litigation and on the status of the
       property.  If the Court is inclined to consider this, then I would request that the
24     matter be continued at least to the November hearing that is currently set for
       disclosure statement....  There was evidence to be provided by Mr. Banayan that
25     he does have the ability to fund a plan, and that could be brought to light in
       short order, your Honor.
26
   *Id.* at 14-16.

27        Counsel for IndyMac stated: "The ending balance, your Honor, on the July monthly

28

operating report for this estate is $65.13, less than the amount that's necessary to pay for telephone bills that are showing up on the July monthly operating report.... There's no money in this estate, unless Mr. Banayan, out of his good graciousness and strategic desire, drops it into the estate.... And I think that dropping that status report into the record within a couple of hours of a status conference in a case like this is not enough and it's time for a conversion." *Id.* at 16.

The Bankruptcy Court asked counsel for Debtor if there was "anything further?" *Id.* at 17. Counsel for Debtor stated: "No, your Honor. I don't think there's really anything to add. As I think has been established, the debtor ... has put a lot into this case, has been obviously very busy with the relief from stay matters, has done everything to protect the property within its power. It is doing everything within its power at this time to protect that property.... The debtor believes there is a way to get equity out of this property and pay off creditors, and that's the direction that it has been going at all times and that's the direction it hopes to continue to push forward on." *Id.* at 17-18.

The Bankruptcy Court then stated that it was going to "convert this case to one under Chapter 7." *Id.* at 19. The Bankruptcy Court stated:

> I'm looking at the untimely [July] operating report.... And when I look at that as to what happened with this case up to that point in time, we have no income, and the only thing they we have are advances, if you will, not authorized by the Court, by Aviara and Mr. Banayan himself, totaling some $17,000. Now, [counsel for IndyMac] points out on page 6 of that untimely operating report that what was left in the account was $65.13. And you have argued eloquently about how this house is a valuable asset for repayment of creditors and the like, but the problem that we've been having ... is that I think your client [i.e., Debtor] is too close to the problem....
>
> When you couple that with the fact that your client has failed to file a timely status report for this hearing, has failed to file a timely operating report for August, that ... no operating reports had been filed by [the first status conference on April 11, 2013].... [E]xcuse me. The first operating report had been filed by that date; however, the case [was] filed January 31, 2013. So it's been here a full nine months, and you've had no progress being made on getting a plan filed other than one that is patently unable to proceed.... And then we have IndyMac's concern about the protection of the property, which is legitimate because protection of the property depends on Mr. Banayan.... [The Bankruptcy Court] definitely has the impression that the advancement of money is really pretty much up to Mr. Banayan; and if he chooses not to advance the money and this process of fixing the house starts ... not quickly, not when the case was filed, but nine months after, he's finally getting around to

repairing that which he could have repaired earlier. But if he stops advancing the funds, there is no money in this case to do that.

So I think we need a trustee. I think a trustee can make the kinds of decisions the trustee needs to make to get the property protected, to get the property sold, to pursue the litigation if it is meritorious or to drop it if it is not, and to determine what the trustee needs to do in order to even make this case successful or to let it just liquidate, as a case sometimes has to do. So I think at this point an objective person such as a Chapter 7 trustee would be the best to look at the management and the disposition of the assets of this estate. I think that the points that [IndyMac's counsel has] made concerning the inaccuracy of the [July] operating report ... gives me serious concerns. There is a lot of inaccuracy in it based on what we do know; for example, the amount of accrued administrative expenses, which have not been provided for.... [The administrative expenses are] just accruing -- ... there is a serious loss and that this is cause for conversion.

*Id*. at 19-21.

## C.   Order Converting Case

On October 4, 2013, the Bankruptcy Court issued the Order Converting Case. (Notice of Lodgment Supp. Mot. For Stay, Ex. K, ECF No. 4-2 at 65-69). The Order Converting Case states:

On March 6, 2013, this Court entered an order pursuant to 11 U.S.C. § 105(d) on notice to the Debtor, its counsel and all creditors setting a Chapter 11 status conference and *inter alia* providing for sanctions, if appropriate, including dismissal or conversion of the case for noncompliance with various orders applicable to Chapter 11 debtors ('Scheduling Order').

The first hearing on the Scheduling Order was held April 11, 2013. At that hearing, the Court scheduled a continued hearing for July 18, 2013, and directed the Debtor to file a plan and disclosure statement in time to have it considered in conjunction with this continued hearing. Additionally, the Court directed the Debtor to amend Schedules B and D. The Debtor did not timely file a plan and disclosure statement, as it had been directed to do. The Debtor amended Schedule B, but it did not amend Schedule D, as it had been directed to do....

At the October 3, 2013 hearing, the Court found that the Debtor had violated ¶ 3 of the Scheduling Order. This paragraph directs the Debtor to file a status report on its Chapter 11 case no later than one week prior to each continued hearing. The Debtor filed its status report on October 3, 2013 – the same date as the continued hearing.

Additionally, the Court determined the Debtor had violated ¶ 2.d. of the Scheduling Order requiring it to be current on filing all of its Monthly Operating Reports ('MOR'). The MOR for the period of May 1, 2013 through May 31, 2013 was due no later than the twentieth day after the close of the period, i.e., June 20, 2013. It was filed on July 16, 2013, when the Debtor filed its MOR for the period of June 1, 2013 through June 30, 2013. More importantly, no MORs have been filed for the period of July 1, 2013 through

July 31, 2013, or for the period of August 1, 2013 through August 31, 2013. At the October 3, 2013 hearing, the Court also disapproved the Debtor's disclosure statement for the reasons cited in the tentative ruling. Although the Court's tentative ruling had indicated its willingness to permit the Debtor to file another disclosure statement and plan, IndyMac opposed this proposal. IndyMac argued that the Debtor's most recent MOR (June) showed a continuing post-petition loss totaling $83,267.01 as of June 30, 2013, with no business income received since the inception of the case. Rather, Debtor's sale revenues have consisted of funds advanced by the Debtor's insider, Kamran Banayan, and his wholly owned company, Aviara Development, to pay some of the Debtor's postpetition operating expenses.

The MOR reflects and IndyMac confirmed, that the Debtor has not made any of postpetition payments that have come due on IndyMac's secured claim; nor has the Debtor used any of the funds advanced to repair the water leakage defects to the real property despite the approaching rainy season. For these reasons and others stated on the record, IndyMac urged conversion of this case to one under Chapter 7.

Based on the foregoing, the Court finds, and for good cause ORDERS, that:

Pursuant to 11 U.S.C. § 1112(b)(4), this case be converted to one under Chapter 7 for 'cause' including: (1) Debtor's continuing failure to comply with the Scheduling Order; (2) Debtor's failure to timely file MORs; and (3) the substantial and continuing loss to or diminution of the estate and the absence of reasonable likelihood of rehabilitation. *See* 11 U.S.C. §§ 1112(b)(4)(A), (E) and (F).

*Id*. (citations omitted).

### D.   Appeal

On October 8, 2013, Debtor filed a Notice of Appeal of the Order Converting Case. (ECF No. 1). On October 8, 2013, Debtor filed an election to have the appeal heard by this Court. *Id*.

On November 7, 2013, Debtor filed its opening brief. (ECF No. 20). Debtor contends:

The Bankruptcy Court, having its relief from stay proceedings on appeal once again, now seeks to prevent the District Court from having the ability to overturn the Bankruptcy Court's decisions. To do this, the Bankruptcy Court has taken the extraordinary step of converting the Debtor's chapter 11 bankruptcy into a chapter 7 bankruptcy without giving the Debtor reasonable notice and virtually no opportunity to present an opposition allowing the Bankruptcy Court to make its ruling on an incomplete record that the Bankruptcy Court has itself manipulated....

Interestingly, the Bankruptcy Court's Order on Conversion made no mention of the Bankruptcy Court's findings on the plan and disclosure statement, instead finding that conversion was warranted based on the Debtor's failure to file timely operating reports, the Debtor's failure to provide a timely status

1    report and on the Debtor's alleged continuing loss based solely on the record
2    in front of the Bankruptcy Court at a status conference hearing. A review of the
     alleged grounds upon which the conversion was entered and the way in which
3    it was procedurally achieved shows that the Bankruptcy Court has a strong bias
     against the Debtor and its actions are a clear abuse of discretion.

4    *Id*. at 4-5. Debtor requests this Court to reverse the Order Converting Case and "withdraw

5    the Bankruptcy Court's reference with relation to this bankruptcy." *Id*. at 33.

6           On December 20, 2013, IndyMac filed its opposition brief. (ECF No. 21). IndyMac

7    contends:

8        YBA blames everyone but itself for the failure of its chapter 11 case. YBA
     contends it was denied due process because, 'Debtor had no reason to believe
9    that the issue of conversion would be entertained by the Bankruptcy Court' at
     the October 3, 2013 hearing. This statement belies YBA's credibility. Not
10   only was YBA admittedly aware of the risk of case conversion at the October
     3, 2013 at 10:30 a.m. hearing, but at 8:00 a.m. that same morning YBA filed an
11   11th hour, woefully untimely, status report arguing against conversion because
     Banayan had finally started caulking windows after it began raining. YBA was
12   keenly aware of the potential for case conversion and its argument that it was
     denied due process is frivolous.

13
     Next YBA argues that the Bankruptcy Court abused its discretion in converting
14   the case to chapter 7 because no cause existed for doing so. YBA fails in its
     attempt to prove an abuse of discretion because YBA was admittedly out of
15   compliance, the estate had amassed substantial unpaid administrative expenses
     and relief from stay had been granted thereby precluding a feasible plan. YBA
16   simply ignores the reality of its chapter 11 case status and compliance and
     engages in a 30 page rant against the Bankruptcy Court and IndyMac. When
17   viewed in context and under applicable legal authorities, there is no legitimate
     question that the Bankruptcy Court was well within its statutory power to
18   convert the Debtor's case to chapter 7.

19   *Id*. at 5.

20          On December 20, 2013, the Chapter 7 Trustee filed a brief.[2] (ECF No. 23). The

21   Chapter 7 Trustee contends that the Debtor was accorded due process; the Debtor's argument

22   based on due process has been waived; and the Bankruptcy Court did not abuse its discretion

23   in deciding to convert the case.

24          On January 10, 2014, Debtor filed a reply brief. (ECF No. 26). Debtor contends that

25   IndyMac and the Chapter 7 Trustee "point to additional alleged failures of the Debtor" which

26

27        [2] On November 13, 2013, the United States Trustee filed in the underlying bankruptcy
28   case a report of the election of Nancy Wolf as the Chapter 7 Trustee. (Req. Judicial Notice
     Supp. Br. Appellee Trustee, ECF No. 23-1 at 3-6).

"are not issues that were considered [by] the Bankruptcy Court and should be ignored." *Id*.

at 8.   "The Debtor requests that the District Court stick to the actual findings of the

Bankruptcy Court and see them for what they are, just another effort to ignore the facts of

the case and establish a clear bias against the Debtor." *Id*.  Debtor objects to the Chapter 7

Trustee's brief on the basis that the Trustee does not have standing to oppose Debtor's appeal

because "the Trustee was not in existence at the time of the conversion order, it was only

created after the order was entered." *Id*. at 22.

On January 31, 2014, the Court heard oral argument.  (ECF No. 31).

## II.   Discussion

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).  *See In

re Rosson*, 545 F.3d 764, 770 (9th Cir. 2008) ("[A] bankruptcy court order converting a case

from one under another chapter of the Bankruptcy Code to one under Chapter 7 is a final and

appealable order.").

Debtor's brief identifies two issues in this appeal: (A) "the Bankruptcy Court denied

the Debtor due process on the Conversion Order"; and (B) "the Bankruptcy Court abused its

discretion by entering the Conversion Order."  (ECF No. 20 at 23, 26).  All parties agree that

the standard of review for the first issue is *de novo*, and the standard of review for the second

issue is abuse of discretion.  (ECF No. 20 at 22-3; ECF No. 21 at 6; ECF No. 23 at 7).

### A.   Due Process

The Supreme Court set forth the due process requirements for notice as follows:

> An elementary and fundamental requirement of due process in any proceeding
> which is to be accorded finality is notice reasonably calculated, under all the
> circumstances, to apprise interested parties of the pendency of the action and
> to afford them an opportunity to present their objections.  The notice must be
> of such nature as reasonably to convey the required information ... and it must
> afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

"The adequacy of notice and hearing respecting proceedings that may affect a party's rights

turns, to a considerable extent, on the knowledge which the circumstances show such party

may be taken to have of the consequences of his own conduct." *Link v. Wabash R.R. Co.*,

370 U.S. 626, 632 (1962).  For example, the Bankruptcy Appellate Panel for the Ninth Circuit has held: "A dismissal without notice and an opportunity to be heard would not be appropriate where substantive issues are to be determined, but if a case involves only very narrow procedural aspects, a court can dismiss a Chapter 13 case without further notice and a hearing if the debtor was provided with notice of the requirements to be met.  Thus, a procedure is perfectly appropriate that notifies the debtor of the deficiencies of his petition and dismisses the case sua sponte without further notice and a hearing when the debtor fails to file the required forms within a deadline." *In re Tennant*, 318 B.R. 860, 870-71 (B.A.P. 9th Cir. 2004) (quotations omitted).

The March 6, 2013 Scheduling Order requires the Debtor to submit "all operating reports due under ORR C.3." and submit a status report "no later than one week in advance of this status conference and before every continued hearing of this Chapter 11 status conference."[3]  (Notice of Lodgment Supp. Mot. For Stay, Ex. C at 2, ECF No. 4-2 at 15). The Scheduling Order states that "[f]ailure to file this status report or comply with the requirements ordered by the Court may be cause to ... convert this case ... as permitted by 11 U.S.C. § 105(a) and 1112(b)."  *Id.*  The Scheduling Order informs Debtor of what it is supposed to do, when it is supposed to do it, and the possible consequences of failure to do it.  The Bankruptcy Court provided counsel for Debtor with the opportunity at the October 3, 2013 status conference to address IndyMac's argument that conversion was appropriate "based on the record that's before the Court today" due to "lack of compliance with [the Bankruptcy Court's] status conference order," including the untimely filing of the status report and the "monthly operating reports [which] are missing" or "chronically late throughout the entire case."  (Suppl. Notice of Lodgment Supp. Mot. Stay, Ex. 7 at 5-6, 8, ECF No. 20-8).  The Scheduling Order and the October 3, 2013 hearing provided Debtor with sufficient notice and opportunity to be heard to meet due process requirements.  *See In*

---

[3]  ORR C.3. states that the debtor must file Monthly Operating Reports no later than twenty calendar days after the close of each month.  (Appellee's Notice of Lodgment, Ex. 3 at 65 ¶ C.3., ECF No. 22).

*re Bijelonic*, No. CV 11-08077-JVS, 2012 WL 2263289, at *5 (C.D. Cal. June 15, 2012) (holding that a bankruptcy court's initial scheduling order "provided sufficient notice and opportunity to present evidence to meet due process requirements" when the bankruptcy court sua sponte converted a Chapter 11 case to Chapter 7 because a debtor failed to comply with an initial scheduling order by not submitting a status report prior to the second status conference and failing to appear at the second status conference.

Debtor contends that, prior to the October 3, 2013 status conference, Debtor had not been warned about its failure to comply with the Scheduling Order. No party submitted the transcripts from the April 11, 2013 and July 18, 2013 status conference. The only record from these status conferences in the appellate record are the brief minute orders issued after each conference, and the Bankruptcy Court's Order Converting Case, which states that, at the April 11, 2013 status conference, Debtor was "directed to file a plan and disclosure statement in time to have it considered in conjunction with" the July 18, 2013 status conference and amend Schedules B and D. (Notice of Lodgment Supp. Mot. For Stay, Ex. K, ECF No. 4-2 at 67). The minute order from the April 11, 2013 status conference confirms this, *see* Notice of Lodgment Supp. Mot. For Stay, Ex. D, ECF No. 4-2 at 17, as do the uncontradicted comments of IndyMac's counsel at the outset of the October 3, 2013 status conference, *see* Suppl. Notice of Lodgment Supp. Mot. Stay, Ex. 7 at 9, ECF No. 20-8 ("there was an initial date set for disclosure statement in this case [and] the debtor just blew through the deadline to file the disclosure statement, didn't file it, wound up at the last hearing on case status, and you gave the debtor a reprieve and you gave the debtor a new deadline"). As stated in the Order Converting Case, Debtor failed to comply with this order to file a disclosure statement and plan prior to July 18, 2013, and at the July 18, 2013 hearing, the Bankruptcy Court "[o]nce again ... ordered the Debtor to file its plan and disclosure statement." (Notice of Lodgment Supp. Mot. For Stay, Ex. K, ECF No. 4-2 at 67). Accordingly, at least with respect to Debtor's failure to comply with the Bankruptcy Court's initial order to file a disclosure statement and plan, Debtor received a warning and an extension of time.

1    To the extent the Bankruptcy Court converted the case for failure to comply with the
2    requirements in the Scheduling Order (including the requirement to timely comply with the
3    Bankruptcy Court's other orders, such as the April 11, 2013 order to timely file a disclosure
4    statement and plan and amend Schedule D), the Court finds that the Scheduling Order and
5    the October 3, 2013 status conference provided sufficient notice and opportunity to be heard
6    to satisfy due process requirements.

7    Even if the Bankruptcy Court failed to provide Debtor with sufficient notice and
8    opportunity to be heard, Debtor has failed to show that it was prejudiced by any defective
9    process afforded it. *See In re Rosson*, 545 F.3d 764, 777 (9th Cir. 2008) ("Because there is
10   no reason to think that, given appropriate notice and a hearing, Rosson would have said
11   anything that could have made a difference, Rosson was not prejudiced by any procedural
12   deficiency.  We hold that the bankruptcy court did not abuse its discretion in denying the
13   motion to dismiss and converting the case to Chapter 7."); *In re City Equities Anaheim, Ltd.*,
14   22 F.3d 954, 959 (9th Cir. 1994) (rejecting due process claim for lack of prejudice where
15   debtor could not show that any different or additional arguments would have been presented
16   if bankruptcy court had timely approved petition for new counsel).  In the appellate briefing,
17   Debtor has proffered its reasons for failing to comply with the Scheduling Order: "Debtor
18   was heavily burdened with emergency filings in order to protect the Subject Property"; "the
19   Subject Property is vacant and is not generating income"; and "the Bankruptcy Court and
20   Debtor have been in constant contact on the case through the continuing relief from stay,
21   appeal, and hearings on the motion for relief from stay."  Appellant's Opening Br. at 25, ECF
22   No. 20 at 28; *see also* Appellant's Reply Br. at 16, ECF No. 26 at 19 ("Debtor had been
23   understandably preoccupied with the appeal of the second relief from stay order and with
24   repairs to the Subject Property.").  These reasons were brought to the Bankruptcy Court's
25   attention by Debtor's counsel, *see* Suppl. Notice of Lodgment Supp. Mot. Stay, Ex. 7 at 17-
26   18, ECF No. 20-8 at 18-19 ("As I think has been established, the debtor has been ...
27   obviously very busy with the relief from stay matters, has done everything to protect the
28   property within its power."), or the Bankruptcy Court was aware of them at the October 3,

2013 hearing, *see id.* at 19 (the Bankruptcy Court stated at the outset of its oral ruling that the Scheduling Order is "basically a way to keep the cases moving forward, especially one such as this one, where there is one asset and no income"). Debtor has failed to demonstrate that, given more notice, Debtor "would have argued any differently." *In re City Equities Anaheim, Ltd.*, 22 F.3d at 959 ("CEA ... contends that the bankruptcy court violated due process by failing to approve CEA's petition for new counsel before the hearing on Lincoln's motion.... At no point does CEA explain how its counsel would have argued any differently had formal approval been granted. Indeed, CEA's arguments on appeal are essentially the same as those raised by its owners in the bankruptcy court.").

Applying *de novo* standard of review, the Court will not reverse the Order Converting Case based upon any denial of due process.

### B.    Order Converting Case

The second issue is whether the Bankruptcy Court abused its discretion by entering the Order Converting Case. "The bankruptcy court is given wide discretion to convert a chapter 11 case to chapter 7 for cause, and an order for conversion is reviewed for an abuse of discretion." *In re Greenfield Drive Storage Park*, 207 B.R. 913, 916 (B.A.P. 9th Cir. 1997). "[T]he first step of our abuse of discretion test is to determine *de novo* whether the trial court identified the correct legal rule to apply to the relief requested. If the trial court failed to do so, we must conclude it abused its discretion." *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If the trial court identified the correct legal rule to apply to the relief requested, the reviewing court must then determine whether the trial court's "resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.* at 1263; *see also In re Hernandez*, 483 B.R. 713, 719 (B.A.P. 9th 2012) (same).

### 1.    Whether the Bankruptcy Court Applied the Correct Legal Standard

The bankruptcy code provides:

(b)(1) ... [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the

estate, for cause....

(2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--

    (A) there is a reasonable likelihood that a plan will be confirmed ... within a reasonable period of time; and

    (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--

        (i) for which there exists a reasonable justification for the act or omission; and

        (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b).  "[T]he term 'cause' includes--

    (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; ...

    (E) failure to comply with an order of the court;

    (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter....

11 U.S.C. § 1112(b)(4).  "Cause is a flexible standard, subject to the Court's discretion, and does not necessarily involve one or all of the those factors set forth in Section 1112(b)(4)." *In re Prods. Int'l Co.*, 395 B.R. 101, 107 (Bankr. D. Ariz. 2008).

     A bankruptcy court is empowered to convert or dismiss a Chapter 11 case *sua sponte*. *See* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."); *see also In re Rosson*, 545 F.3d 764, 771 n.8 (9th Cir. 2008) ("Although the statute provides for conversion 'on request of a party ... or the ... trustee, ...' there is no doubt that the bankruptcy court may also convert on its own motion.") (citing 11 U.S.C. § 105(a)); *In re Labankoff*, No. 09-1300-PAJUK, 2010 WL 6259969, at *5 (B.A.P. 9th Cir. June 14, 2010) (collecting cases).

     In its oral ruling at the October 3, 2013 status conference and in the Order Converting

1   Case, the Bankruptcy Court relied upon the "cause" factors listed in 11 U.S.C. §

2   1112(b)(4)(A), (E) and (F).  The Court finds that the Bankruptcy Court applied the correct

3   legal standard to determine whether the case should be converted.

### 2.   Whether the Bankruptcy Court's Finding Was Illogical, Implausible, Or Without Support

The Court must next determine whether the Bankruptcy Court's "resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263.

The Scheduling Order and the incorporated ORR required Debtor to timely file monthly operating reports, file a status report no later than one week prior to any status conference, and otherwise comply with the orders of the Bankruptcy Court.  As set out above, Debtor filed the February, May and July operating reports late, and failed to file the August operating report.  Debtor failed to comply with the Bankruptcy Court's April 11, 2013 order to file the Disclosure Statement and Plan prior to the July 18, 2013 status conference.  Debtor failed to comply with the Bankruptcy Court's April 11, 2013 order to amend Schedule D.  Debtor filed the status report for the October 3, 2013 status conference on the day of the conference, rather than a week before, as it had been ordered to do in the Scheduling Order.[4]

"The statute does not indicate that compliance with orders should be measured by viewing all orders together and weighing how many the debtor is in compliance with and how many it is not.  The statute is written in the singular; thus failure to comply with a single order is sufficient for cause." *In re Bijelonic*, No. CV11-8077-JVS, 2012 WL 2263289, at *4 (C.D. Cal. June 15, 2012) (citing 11 U.S.C. § 1112(b)(4)(E)).  Based upon the facts listed above, the Bankruptcy Court's finding that Debtor failed to comply with the Scheduling Order and ORR is not illogical, implausible, or without support in inferences that may be

---

[4]   Debtor failed to file status reports prior to the April 11, 2013 and July 18, 2013 status conferences, but the Bankruptcy Court did not rely upon these facts in reaching its decision, and this Court does not rely upon them in determining whether the Bankruptcy Court abused its discretion in converting the case.

drawn from the facts in the record.

Debtor contends that the Bankruptcy Court should have found that converting the case was not appropriate pursuant to 11 U.S.C. § 1112(b)(2). That provision requires the Bankruptcy Court to not convert a case "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and if the court makes additional findings, including that "the grounds for converting or dismissing the case include an act or omission of the debtor ... for which there exists a reasonable justification for the act or omission." *Id*. The Bankruptcy Court did not make the predicate finding of identifying unusual circumstances establishing that converting the case was not in the best interests of creditors and the estate. Even if such unusual circumstances existed, after considering the justifications proffered by Debtor at the October 3, 2013 hearing and in the subsequent appellate briefing, the Court finds that the Bankruptcy Court did not abuse its discretion in finding that no reasonable justification exists for the Debtor's failures to comply with the Scheduling Order. *Cf. In re Hoyle*, No. 10-01484-TLM, 2013 WL 210254, at *9 (Bankr. D. Idaho Jan. 17, 2013) ("Section § 1112(b)(4)(E) provides that 'failure to comply with an order of the court' constitutes cause to convert or dismiss a chapter 11 case.... [F]ailure to comply with a court order need not be willful, in bad faith, or fraudulent, because a debtor takes on the responsibilities required by the Code in availing himself of its protections."); *In re Whetten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012) ("To allow a debtor to sidestep [its] duties simply because he is 'busy' would render the Code's reporting requirements a nullity.... The late filing of catch-up monthly reports does not satisfactorily explain or excuse failure to satisfy a debtor's duties as a chapter 11 debtor.... Monthly reports and the financial disclosures contained within them are the life-blood of the Chapter 11 process and are more than mere busy work.... The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize.... If a debtor does not fulfill this basic obligation during the Chapter 11 case, when it knows it will have to come before the court on any number of occasions, how can

1    the creditors have any confidence that the debtor will timely and accurately report its income

2    and make the required distributions under its plan, when the court and the [United States

3    Trustee] are no longer monitoring the case? Consequently, the importance of filing monthly

4    reports cannot be over-emphasized.  A debtor ignores this basic duty at its own peril."); *In*

5    *re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) ("[I]n the bankruptcy context, if a

6    debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide

7    by the orders a court enters....  [T]o reap the benefit of chapter 11, the debtor must pay the

8    price of disclosure; he or she needs to provide financial and other relevant information to the

9    creditors to inform them and the Court about the progress and status of the case.")

10   (quotations omitted).

11       The Court finds that the Bankruptcy Court's decision to convert the case did not result

12   from a factual finding that was illogical, implausible, or without support in inferences that

13   may be drawn from the facts in the record.

14       Having determined that the Bankruptcy Court provided adequate due process and did

15   not abuse its discretion in converting the case based upon Debtor's failure to comply with

16   the Scheduling Order ("cause" grounds (1) and (2) in the Order Converting Case), any

17   argument regarding the substantial and continuing loss to or diminution of the estate ("cause"

18   ground (3) in the Order Converting Case) would not affect the outcome of the appeal.[5]  Even

19   considering Debtor's arguments as to "cause" ground (3) and record on appeal, the Court

20   finds that Debtor received notice as to IndyMac's argument that the Bankruptcy Court should

21   convert the case for substantial and continuing loss to or diminution of the estate, *see*

22

---

23       [5]  The Order Converting Case lists the grounds for "cause" as follows:

24
         Based on the foregoing, the Court finds, and for good cause ORDERS, that:
25       Pursuant to 11 U.S.C. § 1112(b)(4), this case be converted to one under Chapter
         7 for 'cause' including: (1) Debtor's continuing failure to comply with the
26       Scheduling Order; (2) Debtor's failure to timely file MORs; and (3) the
         substantial and continuing loss to or diminution of the estate and the absence
27       of reasonable likelihood of rehabilitation. *See* 11 U.S.C. §§ 1112(b)(4)(A), (E)
         and (F).
28
     (Notice of Lodgment Supp. Mot. For Stay, Ex. K, ECF No. 4-2 at 69).

1  Appellee Notice of Lodgment, Ex. 4, ECF No. 22 at 73-75 ("Opposition to Approval of
2  Disclosure Statement and Suggestion That Case Be Converted to a Case under Chapter 7 of
3  the Bankruptcy Code at Case Status Hearing," filed September 19, 2013), and Debtor had
4  an opportunity to be heard in the October 3, 2013 status report and at the October 3, 2013
5  status conference.  The Bankruptcy Court's decision as to "cause" ground (3) did not result
6  from a factual finding that was illogical, implausible, or without support in inferences that
7  may be drawn from the facts in the record, and was not an abuse of discretion.

8       **C.**    **Trustee's Standing**

9      Debtor objects to the Trustee's brief on the basis that the Trustee does not have
10  standing to oppose Debtor's appeal.  The Court overrules Debtor's objection as moot,
11  finding that, even if the Trustee does not have standing, the Court considers the Trustee's
12  brief as an amicus curiae.  *See In re Heath*, 331 B.R. 424, 429-30 (B.A.P. 9th Cir. 2005)
13  (considering trustee's brief as an amicus brief "even if Trustee cannot appear as a party" due
14  to lack of appellate standing); *cf*. Fed. R. App. P. 29 (an amicus curiae brief may be filed
15  with leave of court).  The Court makes no finding as to the Trustee's standing on appeal.

16  **III.**   **Conclusion**

17      IT IS HEREBY ORDERED that the Order Converting Case is AFFIRMED.  The
18  Clerk of the Court shall close this case.

19  DATED:  February 4, 2014

20
21  **WILLIAM Q. HAYES**
United States District Judge